Filed 5/28/24  Baptiste v. Ralphs Grocery Co. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| OLLIE KATRINA BAPTISTE, Plaintiff and Appellant, v. RALPHS GROCERY COMPANY, Defendant and Respondent; DAVID J. GALLO, Objector and Appellant. | D082554 (Super. Ct. No. 37-2022-00012259-CU-OE-CTL) |

APPEALS from orders of the Superior Court of San Diego County, Richard S. Whitney, Judge.  Dismissed in part and affirmed in part.

Law Offices of David J. Gallo and David J. Gallo for Plaintiff and Appellant Ollie Katrina Baptiste and Objector and Appellant David J. Gallo.

Reed Smith, Mara D. Curtis, Kasey J. Curtis, and Rafael N. Tumanyan for Defendant and Respondent.

The trial court sustained without leave to amend a demurrer to Ollie Katrina Baptiste's claims against Ralphs Grocery Company (Ralphs) for

failing to pay her minimum wages for using self-checkout stands at its grocery stores, but as to other claims it overruled the demurrer or sustained it with leave to amend. In a separate order on Ralphs' motion for sanctions, the court ruled the claims to which it had sustained the demurrer without leave to amend were frivolous and directed Baptiste's attorney, David J. Gallo, to pay Ralphs $35,000. Baptiste purports to appeal the order sustaining the demurrer and the sanctions order, and Gallo appeals the sanctions order. We dismiss Baptiste's appeals because the order on the demurrer is not appealable and she lacks standing to appeal the order sanctioning Gallo. We agree with the trial court's ruling that the claims to which it had sustained the demurrer without leave to amend were frivolous and affirm the order imposing sanctions on Gallo for having filed them.

## I.

## BACKGROUND

### A. *Facts*

Because this case comes to us at the pleading stage, we take as true the following facts alleged in Baptiste's operative pleading, the first amended class action complaint. (See, e.g., *Southern California Gas Leak Cases* (2019) 7 Cal.5th 391, 395.)

Ralphs operates retail grocery stores in California. To pay for their groceries, customers may proceed through either a checkout stand staffed by a cashier employed by Ralphs or a self-checkout stand operated by the customer. Baptiste shops at Ralphs' stores in San Diego County and has often used self-checkout stands. In doing so, she performed many of the same tasks as those performed by Ralphs' paid cashiers, but she received no compensation. Ralphs invites, encourages, and requests customers to use self-checkout stands, and it schedules fewer hours for cashiers to induce

2

customers to use self-checkout stands so that they can avoid longer lines at staffed checkout stands. Such measures benefit Ralphs by reducing payroll costs, and harm society by increasing unemployment, exerting downward pressure on wages in the retail industry, and promoting sociological harms related to lack of employment.

B.    *Pleadings*

Baptiste, on behalf of herself and others similarly situated, filed a class action against Ralphs to recover minimum wages for all time customers spent using self-checkout stands. She asserted in her complaint two claims for relief: (1) recovery of minimum wages as damages under Labor Code section 1194; and (2) recovery of minimum wages as restitution under the unfair competition law (UCL; Bus. & Prof. Code, § 17200 et seq.).

Ralphs demurred on the ground customers who used self-checkout stands were not employees entitled to payment of minimum wages, and therefore the complaint failed to state facts sufficient to constitute a cause of action.

Baptiste mooted the demurrer by filing a first amended complaint. She repeated the claims for unpaid wages based on Labor Code section 1194 and the UCL, and added a third claim based on the theory of quasi-contract or unjust enrichment. Baptiste also added claims based on Ralphs' collection and sale of customers' personal information in alleged violation of the constitutional right of privacy and the UCL. We do not describe those claims in any detail because they are not relevant to the issues on appeal.

Ralph demurred to the entire first amended complaint. As to the three claims seeking recovery of minimum wages for time customers spent using self-checkout stands, Ralphs argued the claims failed as a matter of law because the customers were not its employees in that they had no reasonable

3

expectation of compensation for using self-checkout stands, in doing so they performed no "work" within the meaning of the applicable regulation requiring payment of minimum wages, and Ralphs did not "suffer or permit" them to work within the meaning of the regulation.[1]

Baptiste opposed the demurrer. She argued the three claims for recovery of minimum wages sufficiently stated causes of action because customers who used self-checkout stands did work that benefitted Ralphs at their expense, and Ralphs suffered or permitted that work by failing to prevent it even though Ralphs knew the work was being done and could have stopped it by removing self-checkout stands.

The trial court sustained in part and overruled in part Ralphs' demurrer. It sustained the demurrer without leave to amend as to the three claims for recovery of minimum wages, on the ground customers who used Ralphs' self-checkout stands were not employees because in using the stands they performed no work that unjustly benefited Ralphs or for which they had a reasonable expectation of compensation by Ralphs. The court further noted that adoption of Baptiste's theory "would lead to absurd results – consumers in various contexts could claim an employment relationship based on voluntary decisions . . . that happen to provide convenience to both the consumer and the commercial business (e.g., use of self-serve soda machines,

---

[1]     The regulation applicable to retailers is wage order No. 7 issued by the Industrial Welfare Commission (IWC). (Cal. Code Regs., tit. 8, § 11070, subds. 1, 2(G); see *Frlekin v. Apple Inc.* (2020) 8 Cal.5th 1038, 1046 & fn. 3 (*Frlekin*).) "[W]age orders are constitutionally authorized, quasi-legislative regulations that have the force of law." (*Dynamex Operations West, Inc. v. Superior Court* (2018) 4 Cal.5th 903, 914, fn. 3 (*Dynamex*).) Wage order No. 7 requires payment of minimum wages to employees for all hours worked. (Cal. Code Regs., tit. 8, § 11070, subd. 4(B).) It defines " '[e]mploy' " as "to engage, suffer, or permit to work." (*Id.*, subd. 2(D).)

4

gas station pumps, self-service airline check-in, and ATMs)." The court overruled the demurrer or sustained it with leave to amend as to Baptiste's other claims.

C. *Motions for Sanctions*

In connection with each demurrer, Ralphs served a motion seeking sanctions against Baptiste and Gallo under Code of Civil Procedure section 128.7 for filing a frivolous pleading.[2] The motion related to the original complaint was never filed because Baptiste amended her complaint before the motion could be filed. Ralphs filed its motion related to the first amended complaint when Baptiste did not withdraw it within 21 days of service of the motion. (See Code Civ. Proc., § 128.7, subd. (c)(1).) Ralphs sought at least $150,000 in sanctions on the ground that Baptiste's claims for recovery of minimum wages were "patently frivolous" and never should have been filed because no legal authority supported the contention that customers who used self-checkout stands were employees of Ralphs. In support of the motion, Ralphs submitted a declaration from one of its attorneys stating Ralphs had incurred more than $150,000 in attorney fees to defend the action and itemizing those fees by task, attorney performing the task, attorney billing rate, and time spent on the task. Ralphs also sought judicial notice of

---

[2]    By filing a complaint, an attorney certifies the claims and legal contentions "are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." (Code Civ. Proc., § 128.7, subd. (b)(2).) A party may move for sanctions for a violation of the quoted provision after the party serves the motion, but may not file it unless within 21 days after service the challenged claims or contentions are neither withdrawn nor corrected. (*Id.*, subd. (c)(1).) If, after notice and a reasonable opportunity to respond, the court finds a violation, it may impose on the attorney an appropriate sanction, including payment of attorney fees and other expenses the moving party incurred as a direct result of the violation. (*Id.*, subds. (c), (d).)

5

pleadings and other documents filed in three other cases in which Gallo represented plaintiffs who asserted identical claims against other retailers. One of the documents was an order, entered two months before Ralphs demurred to Baptiste's first amended complaint, in which the San Francisco County Superior Court sustained without leave to amend a demurrer to a first amended class action complaint that alleged customers who used self-checkout stands at Albertsons grocery stores were employees entitled to payment of minimum wages. After judgment was entered against the plaintiff, no appeal was taken.

Baptiste opposed the motion for sanctions. She argued sanctions for filing a frivolous pleading were warranted neither as to the claims seeking recovery of minimum wages, because a reasonable attorney could conclude that by using a self-checkout stand a customer did work for Ralphs for which minimum wages had to be paid, nor as to the claims alleging Ralphs' unlawful use of customers' personal information, because the court overruled the demurrer or sustained it with leave to amend as to those claims. Baptiste also objected the amount of sanctions Ralphs requested was excessive. She asked the trial court to award her "$9,600 in compensatory sanctions" for opposing the motion. (See Code Civ. Proc., § 128.7, subd. (c)(1) ["If warranted, the court may award to the party prevailing on the motion the reasonable expenses and attorney's fees incurred in presenting or opposing the motion."].) Baptiste attached to her opposition several documents, including an order, entered a week before Ralphs served its sanctions motion and more than two months before the trial court ruled on its demurrer, in which another court sustained without leave to amend a demurrer to claims asserted by another client of Gallo that customers who used self-checkout stands at Vons grocery stores were employees entitled to payment of

6

minimum wages.  Baptiste also submitted a declaration from Gallo authenticating the documents and stating he spent approximately 12 hours, at an hourly rate of $800, preparing the opposition.

In reply, Ralphs reduced its sanctions request to $35,000, which was the amount of attorney fees it had incurred for drafting the demurrer to Baptiste's claims for recovery of minimum wages.  It asked the trial court to take judicial notice of, among other documents, the registers of actions in three cases in which Gallo's clients had sued grocery stores to show that none of the demurrer rulings rejecting the claims had been challenged in an appellate court.

The trial court granted the motion for sanctions.  The court stated:

> "While the [c]ourt could understand why [Baptiste] would believe it is a matter of opinion as to whether using self-check[ ]out [stands] is 'work' in a general sense, [she] has not shown that any reasonable attorney would believe that in the context of this case where there was no promise or expectation of compensation the actions could constitute 'work' in the legal sense.  Further, [Baptiste] does not sufficiently justify how [her] interpretation would not lead to absurd results.  [Her] interpretation would result in a massive shift that could have enormous consequences on the California economy.  Further, the amount of uncertainty businesses would face could disrupt future innovations in technology."

The court was "bothered by the fact [Baptiste] did not address the case law establishing there must be a promise or expectation of compensation" for an employment relationship to exist.  The court also noted Baptiste had been "warned on multiple occasions about the lack of merits of the minimum wage claims," including by orders of other courts sustaining without leave to amend demurrers to identical claims against other grocery stores and by the court's statement in a prior order that it " 'was extremely likely to sustain the demurer without leave to amend as to the causes of action that rely

7

upon the allegations that [Ralphs] employed customers who elected to use self-checkout registers.' "[3]  The trial court noted none of Gallo's clients had appealed the adverse demurrer rulings and considered that fact an indication Gallo and his clients "did not believe [they were] going to change existing law" or were "making a good faith effort to seek a change in the law."  The court concluded the claims were "clearly frivolous" and directed Gallo to pay Ralphs $35,000.

D.    *Notice of Appeal*

Baptiste and Gallo filed a notice of appeal from the order awarding sanctions and from the order sustaining without leave to amend Ralphs' demurrer to the three claims for recovery of minimum wages by customers who used self-checkout stands.  We invited Baptiste and Gallo to file a letter explaining why the order on the demurrer was appealable.  In their response, they conceded an order sustaining a demurrer without leave to amend is not appealable, but they contended the sanctions order was appealable and it would be impossible to review the sanctions order without also reviewing the order on the demurrer.  Baptiste and Gallo suggested "whether the order on demurrer is properly before this [c]ourt should be reserved to the merits panel."  We issued an order allowing the appeal to proceed as to the sanctions order.

---

[3]    While the demurrer to the original complaint was pending, Ralphs filed a motion to stay discovery.  The motion was still pending after Baptiste amended the complaint and Ralphs again demurred.  In its order granting the motion, the trial court made the statement quoted in the text.

8

## II.

## DISCUSSION

### A.  *Appellants' Contentions*

Baptiste and Gallo contend the trial court erred by sustaining without leave to amend Ralphs' demurrer to the three claims seeking recovery of minimum wages for customers who used self-checkout stands and then sanctioning Gallo for having filed the claims.  Because Ralphs "suffered" or "permitted" such customers to "work," Baptiste and Gallo contend, the customers were "employees" entitled to payment of minimum wages under wage order No. 7 and have valid claims to recover those wages under Labor Code section 1194 and the UCL.  They further contend the claim based on quasi-contract or unjust enrichment was sufficiently stated because customers who used self-checkout stands are entitled to recover minimum wages as restitution for the benefit they conferred on Ralphs at their expense. Baptiste and Gallo go on to argue that even if the trial court correctly sustained the demurrer to those claims without leave to amend, the court erred by imposing $35,000 in sanctions because the claims were not "frivolous" and the amount was excessive and not adequately supported by the record.  They also fault the trial court for failing to rule on Baptiste's request for sanctions against Ralphs for fees incurred in opposing its motion for sanctions.  They ask us to reverse the order imposing sanctions on Gallo and remand the matter to the trial court for entry of an order on Baptiste's request for sanctions.

### B.  *Jurisdictional Issues*

We first resolve some jurisdictional issues in discharge of our duty to make sure we have jurisdiction over the appeal.  (See *Jennings v. Marralle* (1994) 8 Cal.4th 121, 126; *Estate of Sapp* (2019) 36 Cal.App.5th 86, 98.)  The

9

order sustaining without leave to amend Ralphs' demurrer to Baptiste's claims for recovery of minimum wages is not appealable. (*I. J. Weinrot & Son, Inc. v. Jackson* (1985) 40 Cal.3d 327, 331; *Evans v. Dabney* (1951) 37 Cal.2d 758, 759.) The appeal from that order must be dismissed. (*Kirk v. Ratner* (2022) 74 Cal.App.5th 1052, 1066; *Woodman v. Ackerman* (1967) 249 Cal.App.2d 644, 646.) We also must dismiss Baptiste's appeal from the sanctions order because she "has no standing to challenge the order directing her counsel to pay sanctions." (*McCluskey v. Henry* (2020) 56 Cal.App.5th 1197, 1201, fn. 2.) Because "no appeal lies from the denial of her request to the trial court for sanctions against [Ralphs]" for having filed the motion for sanctions, we must dismiss that aspect of the appeal as well. (*Ibid.*; accord, *Wells Properties v. Popkin* (1992) 9 Cal.App.4th 1053, 1055–1056.) Finally, the order imposing sanctions is appealable because the amount imposed exceeds $5,000; and Gallo, as the person directed to pay the sanctions, has standing to appeal the order. (Code Civ. Proc., § 904.1, subd. (a)(12); *Bauguess v. Paine* (1978) 22 Cal.3d 626, 634, fn. 3.) The appeal is thus limited to Gallo's attack on the sanctions order.

C.     *Merits Issues*

We now turn to the merits of Gallo's challenge to the order directing him to pay $35,000 in sanctions to Ralphs for having filed frivolous claims for recovery of minimum wages by customers who used self-checkout stands to buy their groceries. The governing statute provides in relevant part that on motion of a party and after notice and reasonable opportunity to respond, the court "*may* . . . impose an appropriate sanction" on an attorney who filed a pleading that violated the certification that the "claims . . . and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the

10

establishment of new law." (Code Civ. Proc., § 128.7, subds. (b)(2), (c), italics added.) The sanction "*may* consist of . . . an order directing payment to the movant of some or all of the reasonable attorney's fees and other expenses incurred as a direct result of the violation." (*Id.*, subd. (d), italics added.) A monetary sanction for a violation of Code of Civil Procedure section 128.7, subdivision (b)(2) "may not be awarded against a represented party." (*Id.*, subd. (d)(1).) A trial court has broad discretion to impose sanctions if the statutory requirements are met. (*Peake v. Underwood* (2014) 227 Cal.App.4th 428, 441 (*Peake*).) We presume the court's order is correct and do not substitute our judgment for the trial court's; we reverse the order only if the court abused its discretion by transgressing the applicable legal principles or exceeding the bounds of reason and thereby caused a manifest miscarriage of justice. (*Kumar v. Ramsey* (2021) 71 Cal.App.5th 1110, 1121, 1125; *Peake*, at p. 441.) The trial court did not abuse its discretion by sanctioning Gallo, as discussed below.

       1.     *Warrantability of Sanctions*

Gallo's main argument is the trial court erred by ruling that Baptiste's claims for recovery of minimum wages were legally frivolous and their filing warranted imposition of sanctions. A claim is legally frivolous "if it is 'not warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law.' " (*Bucur v. Ahmad* (2016) 244 Cal.App.4th 175, 189; *Peake, supra*, 227 Cal.App.4th at p. 440.) To obtain sanctions, the moving party must show the opposing party's conduct in asserting the claim was objectively unreasonable, i.e., that any reasonable attorney would agree the claim was totally and completely without merit. (*Bucur*, at p. 189; *Peake*, at p. 440.) Whether a claim is legally frivolous such as to warrant imposition of sanctions under Code of Civil Procedure

11

section 128.7 is a question of law we review de novo. (*Ponce v. Wells Fargo Bank* (2018) 21 Cal.App.5th 253, 261–262; *Optimal Markets, Inc. v. Salant* (2013) 221 Cal.App.4th 912, 921–922.)

a. *Merits of Claims*

We start by considering the merits of each of Baptiste's three claims in turn. As will appear, they all lacked merit.

In her first claim, Baptiste relied on Labor Code section 1194 to recover minimum wages on behalf of customers who used self-checkout stands to buy groceries at Ralphs. The statute authorizes an employee who received less than the legal minimum wage "to recover in a civil action the unpaid balance of the full amount of this minimum wage." (*Id.*, subd. (a).) "[I]n actions under the Labor Code to recover unpaid wages . . . , [the employer's] liability turns on whether it employed plaintiffs within the meaning of the applicable IWC wage order governing the industry." (*Taylor v. Financial Casualty & Surety, Inc.* (2021) 67 Cal.App.5th 966, 984.) The wage order that applies to retailers states: "Every employer shall pay to each employee, on the established payday for the period involved, not less than the applicable minimum wage for all hours worked in the payroll period, whether the remuneration is measured by time, piece, commission, or otherwise." (Cal. Code Regs., tit. 8, § 11070, subd. 4(B).) An " '[e]mployer' " is any person "who directly or indirectly, or through an agent or any other person, employs or exercises control over the wages, hours, or working conditions of any person." (*Id.*, subd. 2(F).) An " '[e]mployee' " is "any person employed by an employer." (*Id.,* subd. 2(E).) " 'Employ' means to engage, suffer, or permit to work." (*Id.*, subd. 2(D).) Gallo contends that by allowing customers to use self-checkout stands, Ralphs "suffer[ed]" or "permit[ed]" them to "work" within the meaning of the wage order (*ibid.*) and thereby created an employment

12

relationship obligating Ralphs to pay the customers minimum wages. We disagree. As we shall explain, customers who use self-checkout stands are not doing "work" for Ralphs within the meaning of the wage order.

The term "work" is not defined by the wage order. We thus give the term the usual and ordinary meaning it would have in the employment context, and to do so we may refer to dictionaries. (See *Wendz v. State Dept. of Education* (2023) 93 Cal.App.5th 607, 626–627 [using dictionaries to interpret undefined term in statute]; *Ngu v. City Bail Bonds* (2021) 71 Cal.App.5th 644, 649 (*Ngu*) [statutory construction rules apply to regulations].) A legal dictionary defines "work" as "[p]hysical and mental exertion to attain an end, esp. as controlled by and for the benefit of an employer; labor." (Black's Law Dict. (11th ed. 219) p. 1923.)[4] That dictionary

---

[4] This definition is identical to the one the United States Supreme Court gave to "work" as used in the Fair Labor Standards Act (FLSA; 29 U.S.C. § 201 et seq.). Like wage order No. 7, the FLSA defines " '[e]mploy' " to include "suffer or permit to work" but does not define "work." (29 U.S.C. § 203(g).) The Supreme Court identified three "essential elements of work": (1) "[p]hysical or mental exertion (whether burdensome or not)"; (2) "[e]xertion controlled or required by the employer"; and (3) "[e]xertion pursued necessarily and primarily for the benefit of the employer and his business." (*Jewell Ridge Corp. v. Local* (1945) 325 U.S. 161, 163–165, italics omitted.) Federal court decisions construing provisions of the FLSA or other federal labor laws with language and underlying interests similar to those of state labor laws provide persuasive and reliable guidance to state courts construing state laws. (*Building Material & Construction Teamsters' Union v. Farrell* (1986) 41 Cal.3d 651, 658; *Monzon v. Schaefer Ambulance Service, Inc.* (1990) 224 Cal.App.3d 16, 31.) But federal court interpretations of federal law do not bind state courts as to construction of state law, which sometimes differs substantially from federal law in language and intent and provides employees greater protection. (*Martinez v. Combs* (2010) 49 Cal.4th 35, 68 (*Martinez*); *Morillion v. Royal Packing Co.* (2000) 22 Cal.4th 575, 592 (*Morillion*).) Hence, "[c]ourts must give the IWC's wage orders independent effect in order to protect the commission's delegated authority to enforce the

13

states, "The term [labor] usu. refers to work for wages as opposed to profits." (Black's Law Dict., p. 1045.) A general dictionary defines "work" as "the labor, task, or duty that affords one his accustomed means of livelihood." (Webster's 3d New Internat. Dict. (2002) p. 2634.) Another defines "work" as "employment, as in some form of industry, esp. as a means of earning one's livelihood." (Random House Dict. (2d ed. 1987) p. 2188.) Yet another defines "work" as "[e]mployment; job" and "[t]he means by which one earns one's livelihood." (American Heritage Dict. (2d coll. ed. 1985) p. 1390.) These definitions suggest performance of a task constitutes "work" if the person performing the task (the employee) does so subject to the control of, for the benefit of, and with the reasonable expectation of payment by another (the employer).

Legal authorities also support an interpretation of "work" as used in the wage order as performance of a task for the employer for which the employee has a reasonable expectation of payment. A provision of the Labor Code concerning payment of wages defines " '[l]abor' " to include "labor, *work*, or service whether rendered or performed under contract, subcontract, partnership, station plan, or other agreement *if the labor to be paid for is performed personally by the person demanding payment*." (Lab. Code, § 200, subd. (b), italics added; see *id.*, § 1171 ["The provisions of this chapter shall apply to and include men, women and minors employed in any occupation, trade, or industry, whether compensation is measured by time, piece, or otherwise"].) Our Supreme Court has stated: "The *promise to pay money in return for services rendered* lies at the heart of [the employment] relationship. . . . Even in the absence of an explicit promise for payment, the

---

state's wage laws and, as appropriate, to provide greater protection to workers than federal law affords." (*Martinez*, at p. 68.)

14

law will imply one, and thus authorize recovery, when circumstances indicate that the parties understood the employee *was not volunteering his or her services free of charge.*"  (*Voris v. Lampert* (2019) 7 Cal.5th 1141, 1148, italics added (*Voris*); see *Walling v. Portland Terminal Co.* (1947) 330 U.S. 148, 152 ["The definition 'suffer or permit to work' [in the FLSA] was obviously not intended to stamp all persons as employees who, *without any express or implied compensation agreement,* might work for their own advantage on the premises of another."  (Italics added.)].)

The wage order itself states that, with specified exceptions, it "shall apply to all persons *employed* in the mercantile industry *whether paid on a time, piece rate, commission, or other basis.*"  (Cal. Code Regs., tit. 8, § 11070, subd. 1.)  When considering a different wage order that uses the same definitions, the Court of Appeal stated:  "[T]he history of the definitions of 'employ,' 'employee,' and 'employer' in the [w]age [o]rder suggests that the [w]age [o]rder was meant to apply to persons *who are working for pay in commercial businesses.*  The 'suffer or permit to work' and 'exercises control' standards extend responsibility to businesses who benefit from and have the power to prevent exploitation of workers *who are working for compensation.* And the term 'engage' reaches businesses that form an express or implied contractual relationship *to compensate persons whom they hire.*"  (*Woods v. American Film Institute* (2021) 72 Cal.App.5th 1022, 1037, italics added (*Woods*).)  The court also stated:  "The reference [in the wage order] to the *mode* of payment suggests an assumption that the workers subject to the [w]age [o]rder are working for pay."  (*Id.* at p. 1038.)

Based on the dictionary definitions and legal authorities discussed above, we conclude that for a person's performance of a task to constitute "work" within the meaning of wage order No. 7, the task must be something

15

that is: (1) subject to the control of another as to whether, when, and how it is done; (2) done primarily for the benefit of the other; and (3) done with a reasonable expectation of compensation by the other.[5]

Those factors are absent from this case. A customer like Baptiste who goes to a Ralphs grocery store when she wants, selects the items she wants to buy, chooses to pay for the items by using a self-checkout stand rather than a cashier-staffed one, and then leaves the store with the items, is not subject to Ralphs' control. (See *Bono Enterprises, Inc. v. Bradshaw* (1995) 32 Cal.App.4th 968, 975 [an employee is subject to an employer's control when the employer "directs, commands, or restrains" the employee and "prevents the employee from using the time effectively for his or her own purposes"].) The choices of whether to shop at Ralphs, when to shop, how

_____

[5] All three factors need not concur for an employee to be entitled to compensation by an employer. For example, an employee who is subject to the control of an employer, such as while riding a bus to and from a worksite as required by the employer or waiting for and undergoing required exit searches, need not be performing tasks that benefit the employer during that time to be compensated under the applicable wage order. (*Huerta v. CSI Electrical Contractors* (2024) 15 Cal.5th 908, 920–921 (*Huerta*); *Frlekin, supra*, 8 Cal.5th at pp. 1046, 1056–157; *Morillion, supra*, 22 Cal.4th at pp. 582, 587.) An employee who is suffered or permitted to work, such as while performing duties related to closing a store after clocking out or performing unauthorized overtime after the end of a shift, need not be under the employer's control to be compensated, provided the employer knows or should know the employee is working and the employer can prevent any undesired work from being done. (*Troester v. Starbucks Corp.* (2018) 5 Cal.5th 829, 840, 843; *Morillion*, at pp. 584–585.) The question here is not whether one who is indisputably an employee must be paid for time spent under an employer's control or performing tasks for the employer while not under its control. The question is whether a person's performance of a task constitutes "work" such that she is an employee under the wage order. The three factors we listed in the text must concur for the answer to be "yes."

16

long to shop, what items to buy, and which type of checkout stand to use are all made by the customer at her pleasure, not by Ralphs. A customer who chooses a self-checkout stand rather than a cashier-staffed stand to pay for her groceries performs tasks primarily for her own convenience, not primarily for Ralphs' benefit. And such a customer has no reasonable expectation of payment for the time spent on checking out. Ralphs promised no payment, and the customer's voluntary choice to check herself out does not "indicate that the parties understood the [customer] was not volunteering . . . her services free of charge." (*Voris, supra*, 7 Cal.5th at p. 1148.)[6] A customer who uses a self-checkout stand at a Ralphs grocery store is not doing a job by which she earns a living and so is not performing "work" for Ralphs within the meaning of the wage order. (See Webster's 3d New Internat. Dict., *supra*, p. 2634 ["work" is "the labor, task, or duty that affords one his accustomed means of livelihood"]; American Heritage Dict., *supra*, p. 1390 ["work" is "[t]he means by which one earns one's livelihood"]; *Woods, supra*, 72 Cal.App.5th at p. 1037 [wage order "was meant to apply to persons who are working for pay in commercial businesses"].)[7] Such a customer thus has

---

[6] Gallo objects to reliance on this portion of *Voris* on the ground that the Supreme Court "h[e]ld only that a conversion claim is not an appropriate remedy" for nonpaymnent of wages. (*Voris, supra*, 7 Cal.5th at p. 1163.) The Supreme Court so held, in part, because "a claim for unpaid wages resembles other actions for a particular amount of money owed in exchange for contractual performance—a type of claim that has long been understood to sound in contract, rather than as the tort of conversion." (*Id.* at p. 1156.) That reasoning was supported by the Supreme Court's earlier recognition that an express or implied promise to pay money in exchange for performance of services "lies at the heart of [the employment] relationship." (*Id.* at p. 1148.) That recognition supports our reasoning as well.

[7] Gallo aserts, "*Woods* has no application to for-profit businesses such as [Ralphs]." The *Woods* court held that persons who volunteered to work at an

17

no claim for payment of minimum wages under Labor Code section 1194. (See *Gunawan v. Howroyd-Wright Employment Agency* (C.D.Cal. 2014) 997 F.Supp.2d 1058, 1062–1066 [person who performed no work for alleged employer was not employee entitled to recover minimum wages under Lab. Code, § 1194].)

We also note that "[t]he IWC's power to define employment is . . . not expressly granted in the act creating the commission but merely implied, and thus extends only so far as necessary to permit the commission effectively to exercise its expressly granted powers to regulate wages, hours and working conditions." (*Martinez, supra*, 49 Cal.4th at pp. 70–71.) Wage orders issued by the IWC "must be reasonably necessary to effectuate the purposes of the statute." (*Id.* at p. 71.) Defining employment to include a customer's use of a self-checkout stand at a grocery store, it seems to us, would not be reasonably necessary to regulate the wages, hours, and working conditions of persons who, for the benefit of the store, subject to the control of its management, and for pay, regularly perform the many tasks required for successful operation of the store. Baptiste and other customers who used self-checkout stands, we conclude, were not performing "work" for, and so were not employees of, Ralphs within the meaning of wage order No. 7.

In urging us to reach the opposite conclusion, Gallo advances several arguments. None is persuasive.

---

annual film festival put on by a nonprofit organization and did not expect compensation were not employees. (*Woods, supra*, 72 Cal.App.5th at pp. 1034–1041.) As part of the rationale for that holding, the court explained the applicable wage order "was meant to apply to persons who are working for pay in commercial businesses." (*Id.* at p. 1037.) Although *Woods* involved alleged employment by a nonprofit organization, the court's rationale is not limited to that context and supports our analysis.

Gallo argues customers who used self-checkout stands at Ralphs grocery stores were employees, because "the operation of a checkout stand obviously constitutes 'work,' " and Ralphs' "managers obviously recognize the cashier function as work, because they hire people to perform that exact function." Gallo quotes an online dictionary that defines "work" to mean " 'exertion of effort directed to produce or accomplish something; labor; toil' " and " 'productive or operative activity.' " He also cites *Hernandez v. Pacific Bell Telephone Co.* (2018) 29 Cal.App.5th 131, 142 (*Hernandez*), for the proposition that " 'the standard of "suffered or permitted to work" is met when an employee is engaged in certain tasks or exertion that a manager would recognize as work.' " Gallo goes on to argue that we must interpret that standard broadly to include persons who have not been formally hired but whom the employer allows to perform tasks in the employer's line of business for the benefit of the employer, such as customers who use self-checkout stands at grocery stores. We are not persuaded.

Gallo's proposed interpretation of the wage order is too broad and fails to take into account the context in which it applies. We agree customers who use self-checkout stands perform "work" in a literal sense: They exert themselves to accomplish a goal and do something productive by scanning and bagging the items they are buying. We also agree Ralphs hires cashiers to do those same tasks and "permits" customers to do them. We disagree, however, that such considerations transform customers who voluntarily use self-checkout stands into employees who work for Ralphs. As we explained above, Ralphs does not exercise control over its customers as to when and how they do their shopping or whether they use self-checkout stands or cashier-staffed stands. The choice of which type of checkout stand to use is left to the preference and convenience of the customer and primarily benefits

19

her.  And, importantly, customers who decide to use self-checkout stands have no reasonable expectation they will be compensated for doing so.  The wage order "was meant to apply to persons who are working for pay in commercial businesses" (*Woods, supra*, 72 Cal.App.5th at p. 1037) and "to bring within the 'employee' category all individuals who can reasonably be viewed as working 'in the [hiring entity's] business" [citation], that is, all individuals who are reasonably viewed as providing services to the business in a role comparable to that of an employee" (*Dynamex, supra*, 4 Cal.5th at p. 959, italics omitted; see *Huerta, supra*, 15 Cal.5th at p. 931 ["Courts have explained that ' "the standard of 'suffered or permitted to work' is met when an employee is engaged in certain tasks or exertion that a manager would recognize as work." ' "]).  In our view, customers who come and go to a Ralphs grocery store as they please, choose to use self-checkout stands to ring up their own groceries, and provide no services to other customers are not within the scope of the wage order.

We also reject the broad and literal interpretation of "work" in the wage order that Gallo proposes because its adoption would produce absurd results.  As a federal district court stated in rejecting the same interpretation as that urged by Gallo in this case:

> " 'Plaintiff's construction [of the [w]age [o]rder] would lead to customers becoming employees of all sorts of commercial enterprises, e.g., customers who pump their own gas, use an ATM, fill their soda cup at restaurant[s], use self-service airline check-in, operate credit card machines at restaurant[s] when purchasing take-out, etc.' [Citation.]  To [this] list, the Court could add an endless number of additional examples:  the child who selects and pays for a pumpkin at a pick-your-own Halloween pumpkin patch; the customer who buses their own table at a restaurant; the customer who retrieves online purchases from a package locker or other pick-up point; the farmer's market customer who places produce into their own

20

reusable bag; and so forth.  It strains credulity past its breaking point to categorize these persons as employees." (*Russell v. Walmart Inc.* (N.D.Cal. 2023) 655 F.Supp.3d 937, 941.)

We agree with the district court.  Where, as here, "the interpretation claimed leads to injustice, oppression or to absurd consequences, the general terms used in a statute will be limited in their scope so as to avoid such a result." (*People v. Ventura Refining Co.* (1928) 204 Cal. 286, 290; see *San Diegans for Open Government v. City of San Diego* (2015) 242 Cal.App.4th 416, 429 [literal meaning of words may be disregarded to avoid absurd results]; *Salazar v. McDonald's Corp.* (9th Cir. 2019) 944 F.3d 1024, 1032 ["California follows the rule—including in the context of labor law—that courts may not interpret a statute so as to produce 'absurd consequences.' "].)[8]  We thus reject Gallo's proposed interpretation and limit the scope of the term "work" as used in the wage order to the performance of tasks for the benefit of the employer, subject to the employer's control, and with a reasonable expectation of compensation by the employer.

Gallo also argues that Ralphs "is intentionally ***manufacturing*** 'inconvenience' to induce its customers to provide free labor" by using self-checkout stands.  According to Gallo, Ralphs "deliberately and intentionally makes it very **in**convenient to use a checkout stand operated by a regularly-employed, paid cashier, by scheduling fewer paid cashiers."  He

_____

[8]     We reject Gallo's suggestion the rule requiring courts to avoid interpretations that produce absurd results is limited to cases in which the law being interpreted is ambiguous.  "Although ambiguity is generally a condition precedent to interpretation, ' "[t]he literal meaning of the words of a statute may be disregarded to avoid absurd results or to give effect to manifest purposes that, in the light of the statute's legislative history, appear from its provisions considered as a whole." ' " (*Stokes v. Baker* (2019) 35 Cal.App.5th 946, 957; see *Ngu, supra*, 71 Cal.App.5th at p. 649 [statutory construction rules apply to regulations].)

contends Ralphs should have "to discount purchase totals according to the time expended performing the checkout function" or "revert to [the] traditional business model of having paid cashiers do all the cashier work." "Such a result," says Gallo, "would further California's public policy of spreading employment opportunities among the populace."

This is not a persuasive legal argument that customers who use self-checkout stands are doing work for Ralphs and therefore are employees entitled to recover minimum wages. It is, rather, an expression of Gallo's opinion that Ralphs should not be using self-checkout stands and instead should employ cashiers to check out all customers to create more employment opportunities for Californians. Opinions on whether use of technology to replace human labor is economically or socially beneficial or desirable are proper considerations for a legislative body making policy choices, but not for courts charged with interpreting and applying the law to the facts of cases that come before them. (See, e.g., *Max Factor & Co. v. Kunsman* (1936) 5 Cal.2d 446, 454; *California School Employees Assn. v. Governing Bd. of South Orange County Community College Dist.* (2004) 124 Cal.App.4th 574, 589.)

In sum, we conclude Baptiste did not perform for Ralphs any "work" within the meaning of the wage order by using a self-checkout stand and was not entitled to payment of minimum wages for the time she spent doing so. The claim under Labor Code section 1194 had no merit.

We reach the same conclusion as to the UCL claim. The UCL authorizes an action for relief by a person who lost money as a result of any unlawful business act or practice. (Bus. & Prof. Code, §§ 17200, 17204.) It borrows violations of other laws, including regulations, and makes them independently actionable under the UCL. (*Cel-Tech Communications, Inc. v.*

22

*Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 180; *Smith v. Wells Fargo Bank, N.A.* (2005) 135 Cal.App.4th 1463, 1481.)  In particular, an employee who has not been paid wages as required by a wage order may recover the unpaid wages as restitution under the UCL.  (Bus. & Prof. Code, § 17203; *Cortez v. Purolator Air Filtration Products Co.* (2000) 23 Cal.4th 163, 169, 177.)  Baptiste's UCL claim to recover minimum wages was based on the same alleged violations of the wage order as was her claim under Labor Code section 1194; she merely recast a legal claim for damages as an equitable claim for restitution.  Gallo concedes in his opening brief that "[t]he legal analysis is the same for both claims."  The UCL claim therefore lacks merit for the same reasons the Labor Code claim does.  (See, e.g., *AMN Healthcare, Inc. v. Aya Healthcare Services, Inc.* (2018) 28 Cal.App.5th 923, 950 ["when the underlying legal claim fails, so too will a derivative UCL claim"].)

By her third claim, Baptiste sought to recover minimum wages on a theory of quasi-contract or unjust enrichment.  She alleged that by using self-checkout stands, she and other customers conferred a benefit on Ralphs "by providing their own labor as a substitute for labor which traditionally has been provided by, and which otherwise would have been provided by, [Ralphs'] regularly-employed, paid cashiers."  Baptiste further alleged Ralphs "knowingly accepted the benefits" and "[i]t would be inequitable for [Ralphs] to retain the benefit . . . without paying for its value."  Like the other two claims, this one is meritless.

" 'The right to restitution or quasi-contractual recovery is based upon unjust enrichment.  Where a person obtains a benefit that he or she may not justly retain, the person is unjustly enriched.  The quasi-contract, or contract "implied in law," is an obligation . . . created by the law without regard to the

23

intention of the parties, and is designed to restore the aggrieved party to his or her former position by return of the thing or its equivalent in money.' " (*Unilab Corp. v. Angeles-IPA* (2016) 244 Cal.App.4th 622, 639, italics omitted.)  That one person benefits another is insufficient by itself to require restitution; the recipient of the benefit must make restitution only if under the circumstances it would be unjust for the recipient to retain it.  (*Hartford Casualty Ins. Co. v. J.R. Marketing, L.L.C.* (2015) 61 Cal.4th 988, 998 (*Hartford*); *Welborne v. Ryman-Carroll Foundation* (2018) 22 Cal.App.5th 719, 725.)  " 'It must ordinarily appear that the benefits were conferred by mistake, fraud, coercion or request; otherwise, though there is enrichment, it is not unjust.' " (*Dinosaur Development, Inc. v. White* (1989) 216 Cal.App.3d 1310, 1316, italics omitted (*Dinosaur*).)

Baptiste did not allege that she and other customers who used self-checkout stands at Ralphs grocery stores did so by mistake, fraud, or coercion.  As Gallo points out in his opening brief, she did allege that Ralphs "invites, encourages, and *requests* its customers" to use self-checkout stands by scheduling fewer cashiers so that customers will be induced to use those stands to avoid the long lines at cashier-staffed stands.  (Italics added.)  Baptiste also alleged that she "anticipate[d] that evidence obtained on discovery [would] confirm that [Ralphs] trains its employees to steer its customers toward its customer-operated checkout stands so that [it] will derive even more unpaid cashier work from its customers."  Such allegations do not show a "direct request" from Ralphs for performance of services that would require it to make restitution to customers.  (*Dinosaur, supra,* 216 Cal.App.3d at p. 1316; see *Russell v. Walmart, Inc.* (N.D.Cal. 2023) 680 F.Supp.3d 1130, 1133 [self-checkout stand attendant's encouragement of customers to use stands "does not constitute a request of the sort that can

24

provide a basis for unjust enrichment"].) In any event, the choice of whether to proceed through a cashier-staffed checkout stand or a self-checkout stand lies entirely with the customer and primarily benefits her. "When a person acts simply as she would have done in any event, out of duty or self-interest, she cannot equitably claim compensation from anyone who merely happens to benefit as a result." (*Hartford, supra*, 61 Cal.4th at p. 1000.)

b. *Objective Unreasonableness of Assertion of Claims*

Having determined the three claims to which the trial court sustained Ralphs' demurrer without leave to amend lacked merit, we now must decide whether the filing of those claims warranted imposition of sanctions on Gallo. "[W]hen determining whether sanctions should be imposed, the issue is not merely whether the party would prevail on the underlying factual or legal argument. Instead, courts should apply an objective test of reasonableness, including whether 'any reasonable attorney would agree that [the claim] is totally and completely without merit.' " (*Peake, supra*, 227 Cal.App.4th at p. 448.) Even when an attorney's filing of claims is objectively unreasonable and thereby subject to sanctions, their imposition is discretionary, not mandatory. (*Ibid.*; *Kojababian v. Genuine Home Loans, Inc.* (2009) 174 Cal.App.4th 408, 422 (*Kojababian*).) Several reasons support the trial court's decision to exercise its discretion to sanction Gallo.

First, the claims for recovery of minimum wages clearly lacked merit under existing law. Although when Gallo filed the first amended complaint no published appellate opinion had rejected the theory that a customer who used a self-checkout stand at a grocery store performed "work" for which the store had to pay minimum wages, the theory was inconsistent with the applicable wage order and pertinent case law. As we explained earlier, under the language of the wage order and case law, payment of minimum wages is

25

required when a person performs tasks subject to control by another, for the other's benefit, and with reasonable expectation of payment by the other. And as we also explained earlier, customers who use self-checkout stands at grocery stores do not meet those requirements.

Second, Gallo presented no colorable legal argument to the trial court that would have supported the theory that a customer's use of a self-checkout stand at a grocery store constitutes performance of "work" for the store that entitles the customer to payment of minimum wages for the time spent on checking out. (See *Peake, supra*, 227 Cal.App.4th at pp. 448–449 [appellants' failure to present colorable legal or factual argument to trial court for extension of law to support liability supported sanctions].) Rather, acceptance of that theory would lead to absurd results, as discussed above.

Third, Gallo was put on notice that the claims he filed lacked merit in time to withdraw them before he became subject to sanctions. He concedes that before the time to withdraw expired (i.e., 21 days after Ralphs served the motion for sanctions (Code Civ. Proc., § 128.7, subd. (c)(1)), two other courts had sustained without leave to amend demurrers to identical claims Gallo's clients asserted against other grocery stores. Also before expiration of the withdrawal period, Ralphs had explained in its demurrer and motion for sanctions why the claims lacked merit. (See *Peake, supra*, 227 Cal.App.4th at p. 449 [similar circumstances supported sanctions].)

Fourth, Gallo's client could have appealed the judgment of dismissal entered in the case concerning Albertsons grocery stores but did not. This suggests Gallo and his client lacked a good faith belief in the merits of the claims. Although subjective bad faith is not a requirement for imposition of sanctions under Code of Civil Procedure section 128.7, "the fact that a party [or an attorney] does not actually believe in the merits of [the] claim is

26

relevant to the issue whether sanctions are warranted in the particular case." (*Peake, supra*, 227 Cal.App.4th at p. 449.)[9]

For these reasons, the trial court's decision to sanction Gallo for filing frivolous claims did not "exceed[ ] the bounds of reason" and was not an abuse of discretion. (*West Coast Development v. Reed* (1992) 2 Cal.App.4th 693, 698 (*West Coast*); see *Peake, supra*, 227 Cal.App.4th at pp. 448–450.)

Gallo's arguments for reversal of the sanctions order are meritless. We consider and reject each in turn.

Gallo starts off by claiming a constitutional right to file litigation; proceeding to commend " '[f]orceful representation,' " such as that by "the brave attorney" who convinced the United States Supreme Court in *Brown v. Board of Education* (1954) 347 U.S. 483 to overrule the separate-but-equal principle of *Plessy v. Ferguson* (1896) 163 U.S. 537; and then asking this court "to take a strong stand against the threat that multi-***tens***-of-billion-dollar conglomerates can, through intimidation, dissuade litigants and their counsel from bringing important first-impression[ ] [cases] before this [c]ourt." We agree the right to petition the government for redress of grievances includes the right to file a lawsuit. (U.S. Const., 1st Amend.; Cal. Const., art. I, § 3, subd. (a); *California Motor Transport Co. v. Trucking Unlimited* (1972) 404 U.S. 508, 510; *Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1024.) We also agree sanctions may not be imposed when to do so would stifle an attorney's zealous representation of a client, which may

---

9    Ralphs argues Baptiste's pursuit of discovery on the claims for payment of minimum wages is another indicator that the litigation was conducted in bad faith. Gallo disagrees. We need not decide the point. Sanctions for discovery misconduct are unavailable under Code of Civil Procedure section 128.7, which "shall not apply to disclosures and discovery requests, responses, objections, and motions." (*Id.*, subd. (g).)

require the attorney to take a novel position on a legal issue. (*Guillemin v. Stein* (2002) 104 Cal.App.4th 156, 167–168.) But we emphatically disagree that by filing the claims at issue in this appeal Gallo was acting anything like the attorney who persuaded the Supreme Court in *Brown* to overrule *Plessy*. Unlike the significant constitutional claim involved in *Brown*, the claims at issue here are frivolous. The right to petition does not include a right to file baseless litigation. (*Bill Johnson's Restaurants, Inc. v. N.L.R.B.* (1983) 461 U.S. 731, 743; *Rental Housing Assn. of Northern Alameda County v. City of Oakland* (2009) 171 Cal.Ap.4th 741, 768.) Code of Civil Procedure section 128.7 "enables courts to deter or punish frivolous filings which disrupt matters, waste time, and burden courts' and parties' resources" by imposing sanctions on attorneys like Gallo who present such filings. (*In re Mark B.* (2007) 149 Cal.App.4th 61, 76.)

Gallo goes on to challenge the trial court's stated reasons for imposing sanctions. He faults the court for inferring a lack of belief in the merits of the claims from the fact that Gallo's clients had taken no appeals from the orders sustaining without leave to amend demurrers to similar claims against other grocery stores. Gallo correctly asserts those orders were not appealable (*Evans v. Dabney, supra*, 37 Cal.2d at p. 759), but he concedes an appealable judgment was entered in one of the other cases and no appeal was taken before the trial court sanctioned him in this case. That failure to appeal supported the trial court's inference.

Gallo next faults the trial court for stating he cited no "analogous and helpful" case to support the claims for recovery of minimum wages. He contends the wage order and the cases he cited support the claims. We agree with the trial court. Gallo has never cited any legal authority that supports his theory that a customer's use of a self-checkout stand at a grocery store

makes the customer an employee entitled to payment of minimum wages for the time spent on checking out.

Gallo objects to the trial court's citation of *Hernandez, supra*, 29 Cal.App.5th 131, as support for the court's assertion that he failed to address case law establishing that a promise or expectation of compensation is required for there to be an employment relationship. The objection is a mere quibble. Although *Hernandez* did not discuss whether a promise or expectation of compensation was needed for an employment relationship, the other three cases the court cited did. The inclusion of *Hernandez* in the string citation was inconsequential.

Gallo also objects to the trial court's consideration of its statement in the order staying discovery that the court was extremely likely to sustain the then-pending demurrer as one of the occasions on which he was warned the claims for recovery of minimum wages lacked merit. Gallo contends that if he and Baptiste "had abandoned the subject claims in response to the [court's] comments, this [c]ourt would have never acquired jurisdiction over the important first-impression issue presented by the instant [a]ppeal." We disagree with Gallo's characterization of this appeal. It presents no significant question of first impression. The claims to which the trial court sustained the demurrer without leave to amend are frivolous. Gallo should have heeded the trial court's warning, reexamined his position and authorities, and dismissed the claims before it was too late to avoid sanctions.

Finally, Gallo faults the trial court for finding the claims for recovery of minimum wages frivolous based in part on the absurd results that would follow acceptance of his construction of the wage order, including "a massive shift that could have enormous consequences on the California economy" and

"could disrupt future innovations in technology."[10]  Gallo contends a court may consider the absurd results of a particular construction of a law only if the law is ambiguous.  We have already rejected this contention and concluded Gallo's proposed construction of the wage order, if adopted, would produce absurd results.  Gallo also accuses Ralphs and its competitors of causing the " 'massive shift' " to the economy through "morally-repugnant labor practices" that "upended over a century of settled practice under which regularly-employed, paid cashiers performed the work of cashier" and deliberately increased unemployment.  We disregard such invective, which has no place in briefs filed in this court.  (*Britts v. Superior Court* (2006) 145 Cal.App.4th 1112, 1121, fn. 3; *Thompson v. Friendly Hills Regional Medical Center* (1999) 71 Cal.App.4th 544, 551.)

2.    *Amount of Sanctions*

Gallo finally challenges the amount of sanctions imposed as excessive and inadequately documented.  We reject the challenge.

The "primary purpose" of Code of Civil Procedure section 128.7 "is to deter filing abuses, not to compensate those affected by them."  (*Musaelian v. Adams* (2009) 45 Cal.4th 512, 519.)  The statute expressly authorizes the court to issue an order directing payment of some or all of the moving party's attorney fees and other expenses in an amount "limited to what is sufficient to deter repetition of this conduct or comparable conduct by others similarly situated."  (Code Civ. Proc., § 128.7, subd. (d).)  We review a trial court's

---

10    As "an example of how judicial action may be disruptive of long-standing practices," Gallo filed in this court a motion to take judicial notice of the verdict in a federal court action in which a jury awarded approximately $1.8 billion in damages against real estate brokerages for conspiring to inflate commissions.  We deny the motion because the verdict is not relevant to any issue on appeal.  (*Voris, supra*, 7 Cal.5th at p. 1147, fn. 5; *Johnston-Rossi v. Rossi* (2023) 88 Cal.App.5th 1081, 1089.)

decision on the amount of sanctions for abuse of discretion. (*Kojababian, supra*, 174 Cal.App.4th at p. 422; *Eichenbaum v. Alon* (2003) 106 Cal.App.4th 967, 977; *Dwyer v. Crocker National Bank* (1987) 194 Cal.App.3d 1418, 1437.) The party claiming abuse of discretion has the burden to show the decision was " ' " 'arbitrary, capricious or whimsical.' " ' " (*Sinaiko Healthcare Consulting, Inc., v. Pacific Healthcare Consultants* (2007) 148 Cal.App.4th 390, 401 (*Sinaiko*).)

Gallo has not met his burden. As a sanction, the trial court ordered him to pay Ralphs $35,000, which was the amount of attorney fees it incurred in preparing the demurrer to the frivolous claims for recovery of minimum wages. Ralphs submitted a declaration from one of its attorneys that identified the attorneys who worked on the demurrer, the amount of time each attorney worked, and each attorney's hourly rate. No more was required to prove the amount of fees incurred. (*Olson Partnership v. Gaylord Plating Lab, Inc.* (1990) 226 Cal.App.3d 235, 242–243; *McFarland v. City of Sausalito* (1990) 218 Cal.App.3d 909, 913.) Because substantial evidence supports the amount of fees Ralphs incurred to dispose of the frivolous claims and the law expressly authorizes an award of those fees as sanctions (Code Civ. Proc., § 128.7, subd. (d)), the trial court's decision to sanction Gallo in that amount was not " ' " 'arbitrary, capricious or whimsical' " ' " (*Sinaiko, supra*, 148 Cal.App.4th at p. 401) and did not "exceed[ ] the bound of reason" (*West Coast, supra*, 2 Cal.App.4th at p. 698). Gallo has shown no abuse of discretion.

### III.

### DISPOSITION

The appeal of the order sustaining the demurrer without leave to amend is dismissed. Baptiste's appeal of the order awarding sanctions against Gallo and denying her request for sanctions against Ralphs is dismissed. The order awarding sanctions against Gallo is affirmed.

IRION, Acting P. J.

WE CONCUR:

DO, J.

CASTILLO, J.